# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| SANDRA JONES, AS PARENT OF E.J., A MINOR CHILD, | * * * | |
| Plaintiffs, | * * | |
| vs. | * * | CV 211-005 |
| LONG COUNTY SCHOOL DISTRICT, SHAWN PEEK, individually and in his capacity as Assistant Principal, DR. ROBERT WATERS, individually and in his capacity as Superintendent; and DR. VICKY WELLS, individually and in her capacity as Principal of Walker Middle School, | * * * * * * * * | |
| Defendants. | * * | |

## ORDER

Presently before the Court is Defendants' Motion for Summary Judgment. Dkt. No. 31. For the reasons stated below, Defendants' motion is **GRANTED**.

## BACKGROUND

Plaintiffs are E.J., a minor who was enrolled at Walker Middle School in 2010, and Sandra Jones ("Jones"), E.J.'s mother. Plaintiffs assert various claims based on E.J.'s treatment while at Walker Middle. Plaintiffs' claims are

essentially threefold: (1) E.J. was suspended from school and the circumstances of that suspension violated his constitutional rights, (2) E.J. attempted to re-enroll at Walker Middle after attending homeschooling for a period, and the circumstances of his attempted re-enrollment violated his constitutional rights, and (3) due to his sexual orientation, E.J. suffered harassment and discrimination in violation of his constitutional rights. Each claim is distinct and the relevant facts are presented separately.

### *E.J.'s Suspensions*

On October 14, 2010, one of E.J.'s teachers filed a "Student Discipline Report" regarding alleged insubordination by E.J. Compl. 10, Dkt. No. 1. According to the report, E.J. was insubordinate, disrespectful, and disruptive. Compl. Ex. 1a. The report stated that E.J. was instructed several times to stay in his seat and to remove his thumb from his mouth, but E.J. refused. The report goes on to state that E.J. called his teacher a liar. That same day, Defendant Assistant Principal Shawn Peek ("Peek") called Plaintiff Sandra Jones, E.J.'s mother, and informed her that E.J. was being disciplined for his classroom conduct. Peek offered Jones two options: three days of out-of-school suspension or enrollment in the school's STAR

(Student Transition and Recovery) Program.[1]  Jones picked enrollment in the STAR program for E.J.  Peek informed Jones that E.J.'s participation in the STAR program would begin on October 21, 2010.

The STAR Program is an alternative disciplinary tool, typically imposed in lieu of suspension or expulsion.  For E.J.'s purposes, the STAR Program consisted of two phases: STAR I and STAR IV.  The details about STAR I Program are not clear, but according to Defendant Waters, STAR I "consists of one (1) day Prevent."  Waters Aff. ¶ 16, Dkt. No. 31, Ex. A.  Students in the STAR Program attend all their normal classes and an additional after-school program.  During the normal school day, STAR students wear STAR uniforms.  The STAR students carry a STAR "tracking sheet" to each class that allows the teacher of that class to comment on the students' performance and behavior.  After school, the students report to the STAR program to work on their homework and participate in "drill" which entails a certain amount of physical training.  Waters Aff. ¶¶ 15-19.

E.J. was late to his first day of the STAR Program, October 21, 2010.  It appears from the Complaint that Jones overslept and was unable to get E.J. to the program on time.  Compl. 5.  Jones called the school to apologize, but Defendant Peek was "annoyed and angered."  Id.  Once E.J. arrived at school, Peek

---

[1] It is not clear how long E.J. was supposed to remain in the STAR Program.

ordered him to spend the remainder of the day in in-school suspension. Instead of reporting to in-school suspension, E.J. walked around campus and eventually hid in a school bathroom.[2] E.J. was not discovered until after lunch. Defendant Peek placed E.J. on three days out-of-school suspension for failing to report to the in-school suspension program. Id.

Students placed in Walker Middle School's in-school suspension program are placed in a dedicated classroom, separate from the general student population. Waters Aff. ¶¶ 9-14. An in-school suspension instructor proctors the class. The program is structured so that students maintain their studies by completing assignments provided by their primary teachers. Students in in-school suspension are able to complete tests on the same day as other students, and have access to most school services.

There is some ambiguity about the total number of days E.J. spent in in-school suspension. At one point, Plaintiffs' Complaint states that E.J. "received One day [in-school suspension] and Three days Out of School Suspension," Compl. 5,

_____

[2] Although there is some dispute about the events that occurred on the morning of October 21, 2010, Plaintiffs have not presented any alternative version of these events. Plaintiffs attached to their Complaint a discipline report signed by Peek and dated October 21, 2010, which states "[E.J.] was told to report to [in-school-suspension] this morning around 8:30. Student walked around campus then hid in the 6th grade restroom. Called SRO to help find. Found student after lunch." Compl. Ex. 1c. Regardless of the exact circumstances, E.J. did not arrive on time to the first day of the STAR Program, and he was assigned to in-school suspension for the remainder of the day. Whether E.J. did or did not hide in a bathroom that morning is not determinative in any way.

and elsewhere states "E.J. . . . completed two days in-school suspension," Compl. 6. The Student Discipline Report, attached to Plaintiffs' Complaint, dated October 21, 2010 states that E.J. was given two days of in-school suspension. Compl. Ex. 16. Given that the facts are to be viewed in the light most favorable to the nonmovant, here the Plaintiffs, the Court assumes that E.J. received and completed two days in-school suspension and three days out-of-school suspension for missing the first day of the STAR Program and for failing to report to the in-school suspension program. E.J. was scheduled to return to the STAR Program on October 28, 2010.

On October 27, 2010, after completing the three days of out-of-school suspension, before E.J. began the STAR Program, he had a dispute with the in-school suspension instructor, Ms. Green. Compl. Ex. 1d. Ms. Green observed that E.J. failed to complete a number of assignments provided to him during his in-school suspension, that he continually disrupted the in-school suspension classroom, and that he cheated on a science test. Id. In the space marked "action taken" on the Student Discipline Report, Green wrote "STAR handled." Compl. Ex. 1d.

In any case, E.J. was participating in the STAR IV Program by October 28th or 29th. Compl. Ex. 2. On October 29, 2010, E.J. had an additional dispute with one of his teachers, Mr. Collins. Compl. 5. According to Plaintiffs, Mr. Collins

harassed E.J. during class.[3]  E.J. told Mr. Collins that he would like to call his mother, but Mr. Collins teased E.J. and wrote negative comments on his "star sheet."  Compl. 5.  Jones claims that she immediately came to the school to address the incident. Id.

Jones met with E.J.'s teachers and Walker Middle's Principal, Vicky Wells ("Wells").  After discussing the original October 14, 2010 incident, for which E.J. still had not received his punishment, Jones concluded that she no longer wanted E.J. to participate in the STAR Program. Instead, Jones opted for the out-of-school suspension alternative she was originally offered. Wells agreed, but imposed a five day, rather than three day, out-of-school suspension for E.J.'s original October 14, 2010 infraction.  E.J. served the five day out-of-school suspension during the first week of November 2010.  All totaled, E.J. served two days in-school suspension and eight days out-of-school suspension between October 21, 2010 and the first week of November.  After E.J. completed his suspension, Jones withdrew E.J. from Walker Middle and began home-schooling the child.

### *E.J.'s Attempted Re-Enrollment*

On January 4, 2011, Jones contacted Principal Wells and explained that she intended to re-enroll E.J. at Walker Middle.

---

[3] Plaintiffs do not describe the nature of the harassment.

Within the next two days,[4] Jones went to the school to enroll E.J. and during that visit met with Principal Wells and Defendant Peek. At the meeting, Wells informed Jones that E.J. would need to complete ten days of STAR Program upon re-enrollment at Walker. Jones immediately filed this lawsuit. Compl. (dated January 6, 2011). Jones, soon thereafter, enrolled E.J. in a neighboring school district.

Defendants contend that after the meeting, and before learning about the lawsuit, the Walker Middle Administration decided not to condition E.J.'s re-enrollment on participation in the STAR Program, and instead decided to enter into a "behavior contract" with Jones and E.J. Defs.' Statement Material Facts 1, Dkt. No. 32. The behavior contract defined how future disciplinary matters would be handled. Jones testified that she picked up the behavior contract on January 11, 2011, five days after filing this lawsuit. Jones Dep. 119-20, Dkt. No. 31, Ex. B.

### Harassment and Discrimination of E.J.

Plaintiffs' Complaint asserts that E.J. was harassed and discriminated against because he is a homosexual. Compl. 8-9. Plaintiffs generally allege that E.J. was subjected to "anti-gay insults directed at him by other students daily, and often in the presence of indifferent school administrators." Compl. 8.

---

[4] The exact date of the meeting is unclear.

Plaintiffs also point to two specific instances where other students allegedly spit saliva or food at E.J. Plaintiffs contend that school administrators failed to intervene to prevent the harassment by other students, but for one instance. On that one occasion, E.J. responded to the harassment by slapping the other student in the face. The school administrators punished both students in that situation. Notably, E.J. was also disciplined for calling another student "gay" on a separate occasion. E.J. Dep. 122, Dkt. No. 31, Ex. B.

Plaintiffs further contend that despite complaints to the school administrators, E.J. was ridiculed by the male teaching staff. According to Plaintiffs, Defendant Peek told E.J. to "put bass in [his] voice" and told E.J. that he should toughen up. Pls.' Resp. 15, Dkt. No. 34. Therefore, Plaintiffs' claims of harassment are based on Defendants ridiculing E.J. directly and the Defendants' failure to intervene to prevent harassment by other students.

### Other Facts

Plaintiffs also allege that E.J. suffered harassment by one teacher regarding a science project. Compl. ¶ 46. According to Plaintiffs, E.J. was assigned a "Biome Project" by his science teacher. E.J. did not bring the project to class on the assigned day because his bus driver refused to allow him on the

bus with the project.  Apparently, the science teacher gave E.J.
a failing grade on the project, despite Jones's proffered
excuse.  Plaintiffs assert that the teacher was "clearly rude"
to E.J.  Compl. 8.  Plaintiffs do not connect this allegation of
harassment to any of the constitutional claims asserted.  There
is nothing in Plaintiffs' Complaint, the record, or the parties'
briefing that suggests that the science teacher harassed E.J.
because of his sexual orientation or that E.J. was somehow
denied due process regarding the project.  The science project
warrants no further consideration.

## LEGAL STANDARD

"Summary judgment is appropriate 'if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law.'"  Collins v.
Homestead Corr. Inst., 2011 WL 4584817, at *2 (11th Cir. Oct. 5,
2011) (quoting Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th
Cir. 1990)).  The court must view the evidence and draw all
inferences in the light most favorable to the nonmovant.
Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The
party seeking summary judgment must first identify grounds that
show the absence of a genuine issue of material fact.  Celotex
Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  To discharge

AO 72A
(Rev. 8/82)

this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## DISCUSSION

Plaintiffs' original Complaint asserted a number of constitutional claims, including violations of E.J.'s substantive due process rights, E.J.'s procedural due process rights, and E.J.'s right to equal protection. The claims were asserted against the Long County School District, Robert Waters (Superintendent of Long County School District), Vicky Wells (Principal of Walker Middle School), and Shawn Peek (Assistant Principal of Walker Middle School). The Court dismissed the following claims in its September 2, 2011 order: claims that E.J.'s substantive due process rights were violated; claims that the Long County School District violated E.J.'s equal protection rights; and all claims asserted against Waters, Wells, and Peek in their official capacities. Dkt. No. 30. The claims remaining after the September 2 order were (1) that Defendants violated E.J.'s procedural due process rights and (2) that Defendants Waters, Wells, and Peek, in their individual

AO 72A
(Rev. 8/82)

capacities, violated E.J.'s equal protection rights. Defendants now seek summary judgment on these remaining claims.

## I. Procedural Due Process Claims

Plaintiffs claim that the Defendants violated E.J.'s procedural due process rights by imposing suspensions in an unconstitutional manner and by conditioning E.J.'s re-enrollment at Walker Middle on his completion of ten days in the STAR Program.

### A. E.J.'s Suspensions

Defendants argue that Plaintiffs have failed to show a violation of procedural due process arising from E.J.'s suspensions because Defendants provided Plaintiffs with the minimum required process for suspensions of ten days or less.[5] Defendants made essentially the same argument in their earlier motion to dismiss. Defs.' Mot. Dismiss 12, Dkt. No. 21. In that motion, Defendants asserted that E.J. was only given eight days out-of-school suspension, and that the School complied with the minimum procedural requirements for suspensions of ten days

---

[5] Defendants argue alternatively that the ten-day rule contemplates suspensions of ten consecutive days, not ten days over a period of several weeks, broken up by periods of unrestricted access to the education process, as occurred here. See Defs.' Mot. Summ. J. 9, Dkt. No. 31 (citing Goss and Driscoll). As such, Defendants argue that none of E.J.'s suspension periods total more than ten days, and therefore, he is only entitled to minimum process. Because the undisputed facts show that E.J.'s total exclusion from the education process was ten days or less, regardless of whether the days were consecutive, the Court need not address Defendants' alternative argument.

AO 72A
(Rev. 8/82)

or less.  The Court, however, denied Defendants' motion because

Defendants failed to account for any days where E.J. was placed

in in-school suspension.  Dkt. No. 30.  The Court explained that

it was unable to determine whether the in-school suspension days

should be included in the total number of days that E.J. was

excluded from the education process, because the Court had no

evidence about the nature of the in-school suspension program.

Further, any attempt to do so would have required the Court to

engage in an improper review of evidence outside the Complaint.

The Court held that dismissal of Plaintiffs' claim based on the

suspensions was not appropriate at the time.

Now, following discovery and additional briefing, it is

clear that E.J. was suspended for only eight days.  The two days[6]

E.J. spent in in-school suspension should not be counted toward

the total days he was excluded from the education process.  In

order for a suspension to constitute a deprivation of a property

interest in public education, the suspension must constitute a

*total* exclusion from the education process.  See Goss v. Lopez,

419 U.S. 565, 737 (1975) (referring to a "total" exclusion from

the education process); Laney v. Farley, 501 F.3d 577, 582-83

(6th Cir. 2007) (holding that in-school suspension did not

---

[6] As noted previously, there was some ambiguity as to whether E.J. incurred
two full days of in-school suspension, or some lesser amount.  Taking the
facts in the light most favorable to Plaintiffs, the Court determines that
E.J. incurred two full days of in-school suspension.  Furthermore,
resolution of Defendants' Motion for Summary Judgment on this point would be
the same whether E.J. incurred two days or some lesser amount.

implicate a property interest in education even though students are removed from their classrooms).

E.J. was not totally deprived of his access to public education during in-school suspension; rather, the in-school suspension program allowed E.J. to receive regular assignments and adequate instruction. As Defendant Waters stated in his affidavit, the teachers of students placed in in-school suspension "provide class assignments focused on lessons currently being taught in class" and those students are "required and expected to complete all class assignments provided by the students' teachers so the students can maintain their studies." Waters Aff. ¶ 11. Additionally, the in-school suspension program is "at all times proctored by a duly qualified instructor." Waters Aff. ¶ 10. Plaintiffs have failed to present any evidence that the in-school suspension program did not function as Waters described it in his affidavit.[7] Therefore, the Walker Middle in-school suspension program does not constitute an exclusion from the education process, and the days E.J. spent in that program do not count toward the total exclusion days. E.J. was only excluded from

---

[7] Plaintiffs claim that E.J.'s assignments were provided to him late in the day on two days. Pls.' Resp. 8. By no means, was E.J. totally deprived from the education process simply because he received his assignments later in the day. Therefore the two days of in-school suspension should not be counted in the total number of days E.J. was excluded from the education process.

AO 72A
(Rev. 8/82)

the education process for the eight days he was on out-of-school suspension.[8]

"Where a student is suspended for ten days or less, the constitutional procedural requirements are minimal, merely requiring that the student was given (1) notice of the charges against him, (2) an explanation of the evidence supporting the charge, and (3) an opportunity for him to present his version of the basis for the action. Barnes v. Zaccari, 669 F.3d 1295, 1305 (11th Cir. 2012) (citing Goss v. Lopez, 419 U.S. 565, 577 (1975)). Furthermore, "[t]he dictates of Goss are clear and extremely limited: Briefly stated, once school administrators tell a student what they heard or saw, ask why they heard or saw it, and allow a brief response, a student has received all the process that the Fourteenth Amendment demands." C.B. By and Through Breeding v. Driscoll, 82 F.3d 383, 386 (11th Cir. 1996). See also Roy ex rel. Roy v. Fulton Cnty. School Dist., 509 F. Supp. 2d 1316, 1323 (N.D. Ga. 2007) affirmed in Roy v. Fulton Cnty. School Dist., 288 F. App'x 686 (11th Cir. 2008); Hammock ex rel. Hammock v. Keys, 93 F. Supp. 2d 1222, 1228 (S.D. Ala. 2000). Notably, to the extent that Goss requires any sort of

---

[8] Notably, the result would be the same even if the in-school suspension days were counted in the total because the total deprivation would still be ten days or less, as explained in Goss. Plaintiffs state in their response to Defendants' motion that "EJ's suspension exceeded ten days," but do not provide any support for their contention. Dkt. No. 36, at 7. The Court is unable to identify a single instance other than the days identified so far that would constitute exclusion from the education process.

AO 72A
(Rev. 8/82)

hearing, that hearing need only be a "rudimentary" one. <u>Goss</u>, 419 U.S. at 581. <u>See also</u> <u>Driscoll</u>, 82 F.3d at 387 (holding that even a brief telephone conference can satisfy procedural due process requirements).

Because E.J.'s exclusion from the education process was ten days or less, the Defendants were only required to provide E.J. and Jones with "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." <u>Zaccari</u>, 669 F.3d at 1305. Jones had multiple hearings with the Defendants throughout the course of the relevant events. On October 14, 2010, Defendant Peek called Jones and explained the nature of E.J.'s conduct and that E.J. was being disciplined for insubordination. Compl. 4. During that phone call, Jones elected to have E.J. participate in the STAR Program instead of out-of-school suspension. On October 21, 2010, Jones contacted Peek to notify Peek that Jones overslept and that E.J. would be late to his first day of the STAR Program. Compl. 5. On October 29, 2010, Jones came in person to Walker Middle to discuss the disagreement between E.J. and his teacher, Mr. Collins. Compl. 5. During the October 29 meeting, Jones met with E.J.'s teachers and with Principal Wells. Jones discussed E.J.'s academic performance, the recent disciplinary actions, and whether E.J. would participate in the STAR Program. At the

culmination of that meeting, Jones decided that E.J. would complete five out-of-school suspension days in lieu of participation in the STAR Program.

As Plaintiffs' Complaint makes clear, Jones had ample opportunity to discuss, refute, and complain about the allegations against E.J. Twice, Jones was given optional disciplinary plans and selected the one that she preferred. While Jones may disagree with the reasoning for enhancing E.J.'s punishment from three to five days of out-of-school suspension on October 29, there is no question that Jones and E.J. knew exactly why E.J. was being suspended, namely the October 14 infraction. Moreover, the October 29 meeting provided Jones a full opportunity to present her side of the story. In sum, Defendants provided Jones and E.J. adequate due process prior to E.J.'s suspensions, and are therefore entitled to summary judgment on Plaintiffs' claims that they violated E.J.'s constitutional due process rights.

## B. Re-enrollment at Walker Middle School

The essence of Plaintiffs' claim regarding E.J.'s re-enrollment at Walker Middle School is that Defendants acted unreasonably in requiring E.J. to participate in the STAR program before returning to regular classes. Defendants contend that they withdrew the requirement that E.J. participate in the STAR Program before re-enrolling, and replaced it with a

AO 72A
(Rev. 8/82)

behavior contract.  However, Plaintiffs appear to claim that they did not receive notice of the Defendants' change of heart until after they filed this lawsuit.[9]  As such, the Court considers the requirement imposed at the time Plaintiffs filed their suit, and evaluates the singular issue of whether requiring E.J. to participate in the STAR Program was a violation of E.J.'s constitutional rights.

The Court explained in its order on Defendants' motion to dismiss that substantive due process rights are only implicated where a fundamental right is at issue, and that the right to attend a public school is not considered fundamental.  Dkt. No. 30, at 6.  Therefore, Plaintiffs' claims based on the requirement that E.J. participate in the STAR Program upon re-enrollment, to the extent that those claims are premised on a violation of E.J.'s substantive due process rights, fail as a matter of law.

To the extent that Plaintiffs base their claims on a violation of E.J.'s procedural due process rights, the claims fail for two reasons.  In order to assert a procedural due

---

[9] Plaintiffs' Complaint seeks as relief an "order for Long County Public School [sic] to allow E.J. Minor to immediately enroll in school without additional punishment."  Compl. 9.  To the extent that Plaintiffs are seeking some form of injunction, that claim is denied as moot.  Defendants have repeatedly stated that the only outstanding requirement for E.J.'s re-enrollment is acceptance of the behavior contract.  The behavior contract presents absolutely no limitation or impediment to E.J.'s access to education, it is simply a defined course of disciplinary action that will be imposed if E.J. exhibits future behavioral problems.  Further, Jones agreed that the behavior contract is not an impediment.  See Jones Dep. 89, Dkt. No. 31, Ex. E. ("I have no objections to [the behavior contract].").

process claim, the plaintiff must prove three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." Catron v. City of St. Petersburg, 658 F.3d 1260, 1266 (11th Cir. 2011). Here, Plaintiffs have not shown a deprivation of a property interest and have not pointed to constitutionally-inadequate process. Presumably, Plaintiffs intend to claim that Defendants violated E.J.'s procedural due process rights by depriving him of his constitutionally protected right to public education. However, participation in the STAR Program does not deprive a participant of his right to public education. As noted, STAR Program participants attend all regular classes and an additional after-school program. In actuality, participation in the STAR Program would have required E.J. to attend additional educational programs, not limit his access to education. Thus, Plaintiffs' claims regarding the re-enrollment requirements fail because there was no deprivation of a constitutionally-protected right.

Furthermore, the procedures regarding the re-enrollment requirements were constitutionally adequate. As noted previously, in the context of total exclusions from education for up to ten days, all that is procedurally required is "oral or written notice of the charges against [the student] and, if he denies them, an explanation of the evidence the authorities

have and an opportunity to present his side of the story."

Zaccari, 669 F.3d at 1305. Even assuming that participation in
the STAR Program somehow excluded E.J. from the educational
environment for ten days, the procedures used by the Defendants
were sufficient. By Plaintiffs' own account, Jones met with
several Walker Middle administrators, in person, sometime around
January 6, 2011, at the school. Compl. 6-7. During the
meeting, Jones explained her point of view on the re-enrollment
requirement and expressed her dissatisfaction with Principal
Wells's decision. This sort of hearing is precisely what is
required for limited deprivations of access to public education.
Thus, Plaintiffs' claims regarding the re-enrollment
requirements placed on E.J. fail because Defendants provided
constitutionally-adequate process. For the above reasons,
Defendants are entitled to summary judgment on Plaintiffs'
claims regarding E.J.'s re-enrollment at Walker Middle.

## II. Equal Protection Claims[10]

Plaintiffs contend that Waters, Wells, and Peek either
personally harassed and discriminated against E.J. or allowed
other students to harass E.J. because he is homosexual. In its
September 2, 2011 order, the Court dismissed all equal

---

[10] Although it might seem that the claims related to E.J.'s suspension and re-enrollment are intertwined with the claims that he suffered harassment and discrimination, that is not the case. Plaintiff has not even hinted that E.J.'s suspension and re-enrollment travails were in any way related to his sexual orientation.

AO 72A
(Rev. 8/82)

protection claims against Long County School District and claims against Waters, Wells, and Peek in their official capacities. Therefore, the only equal protection claims that remain are Plaintiffs' claims against Waters, Wells, and Peek in their individual capacities. The claims against Waters, Wells, and Peek take two forms: direct harassment by the Defendants and deliberate indifference to harassment by other students.

**A. Harassment by Defendants**

Plaintiffs assert equal protection claims against Waters, Wells, and Peek in their individual capacities. Compl. 4. However, E.J. and Jones both state very clearly in their depositions that Defendants Waters and Wells did not harass E.J. E.J. Dep. 46, 47, 145, and 146; Jones Dep. 39, 57, and 58. Furthermore, there is no indication anywhere in the record that Waters or Wells ever engaged in any unwanted or unpleasant conduct toward E.J. Accordingly, Waters and Wells are entitled to summary judgment on Plaintiffs' equal protection claims.

Plaintiffs also contend that Defendant Peek harassed E.J. based on his sexual orientation in violation of his equal protection rights. "[I]t is well established that proving intent to discriminate is the essential element of an equal protection claim" and that the plaintiff has the burden to prove that element. Holton v. City of Thomasville School Dist, 425 F.3d 1325, 1348-49 (11th Cir. 2005). See also Nabozny v.

AO 72A
(Rev. 8/82)

<u>Podlesny</u>, 92 F.3d 446, 454 (7th Cir. 1996) (applying the same standard for sexual orientation equal protection claim). Moreover, "discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects." <u>Holton</u>, 425 F.3d at 1349.

Here, Plaintiffs have presented no evidence that Peek acted with a discriminatory purpose. Peek testified, "[p]rior to receiving notice of the above-styled lawsuit, [he] was not aware that Ms. Jones' minor child, E.J., is a homosexual male." Peek Aff. ¶ 24, Dkt. No. 31, Ex. C. E.J. further testified that he never informed anyone other than his mother that he is a homosexual. E.J. Dep. 19. Similarly, Jones stated that she never told anyone that E.J. is a homosexual. Jones Dep. 22-23. Plaintiffs have failed to show that Peek knew that E.J. is a homosexual. At most, Jones testified that she and others could reasonably understand E.J.'s desire to become a cheerleader as implying that he was a homosexual. <u>Id.</u> The Court will not, however, impute Jones's personal gender stereotyping to Peek. Without some evidence that Peek was even aware of E.J.'s sexual orientation, Plaintiffs cannot show that Peek acted with a discriminatory purpose, i.e., selecting a course of action *because of* E.J.'s sexual orientation. Peek is entitled to

summary judgment on E.J.'s equal protection claims based on his harassment of E.J.

## B. Defendants' Deliberate Indifference to Harassment by Other Students

Plaintiffs also claim that Defendants violated E.J.'s constitutional rights because they were deliberately indifferent to other students harassing E.J. In order to assert a claim of deliberate indifference in this context, the Plaintiffs must show that the Defendants had "actual knowledge" of harassment in the [school district's] programs and failed to adequately respond. Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291 (1998).[11] Furthermore, what constitutes harassment "depends on a constellation of surrounding circumstances, expectations, and relationships." Davis, 526 U.S. 629, 651 (1999). As such, courts "must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults."

Although Plaintiffs' Complaint alleges generally that other students directed "anti-gay insults" at E.J., Plaintiffs provide no substantiation of these "daily" insults in their Response to Defendants' motion for summary judgment, and none is discernible

---

[11] Gebser was a Section IX case, but the Eleventh Circuit has indicated that the same deliberate indifference standard in Gebser applies in § 1983 cases where the Plaintiff is seeking to hold a school district accountable for deliberate indifference to sexual harassment. Sauls v. Pierce Cnty. Sch. Dist, 399 F.3d 1279, 1288 (11th Cir. 2005) (applying deliberate indifference standard in the context of teacher-student harassment).

from the record. Rather, Plaintiffs point to two specific instances of student conduct that they claim constituted harassment of E.J., and to which the Defendants were indifferent. Pls.' Resp. 11. Both incidents involve another student spitting on E.J. In the first incident, a student sitting at E.J.'s table in the school cafeteria spat a mouthful of food at E.J. In the second incident, a different student spat sunflower seeds on E.J. while the students were outside after lunch.

The facts surrounding the cafeteria incident are as follows: E.J. was seated at a cafeteria table with a number of other students. E.J. Dep. 49-61. One unidentified student was sitting across and down the table from E.J. The unidentified student began whispering to two other students then spit a mouthful of food at E.J. E.J. then found a STAR Program coach and told him about the other students spitting food. The STAR Program coach told Peek about the incident. Peek came to the table and told the other students that they should not spit food. E.J. claims that Peek was laughing about the incident, but that the other students complied, and did not spit any additional food. E.J. further testified that he believed that Peek was laughing because he thought the situation was humorous, not because of E.J.'s sexual orientation.

Plaintiffs appear to argue that the cafeteria incident constituted harassment to which Peek was indifferent. The undisputed facts show that the cafeteria incident did not constitute harassment and even if it did, Peek was not indifferent. As noted previously, conduct that would be deeply offensive, and actionable harassment, in an adult workplace may be part of the ordinarily unpleasantness that is a middle school cafeteria. Further, there is no indication in E.J.'s deposition testimony that his sexual orientation played any role in the incident. Thus, the other student's conduct did not constitute actionable harassment. However, even if it did, Peek reacted promptly, admonishing the other student to not perform the same act again. Peek's course of discipline was successful, and can in no way be considered deliberate indifference.

In the second incident, E.J. claims that he was approached by another student while the students were outside after lunch. E.J. Dep. 61. The other student spat sunflower seeds at E.J. E.J. states that he then "said something real smart" to the other student. E.J. Dep. 61. In response, the student spat more sunflower seeds at E.J. E.J. stood up and struck the other student in the face. An administrator who was supervising the students became aware of the altercation and took E.J. to Peek. According to E.J., Peek suspended E.J. for three days for hitting the other student and suspended the other student for

AO 72A
(Rev. 8/82)

two days for spitting the sunflower seeds. Like the cafeteria incident, the other student's conduct did not constitute harassment and even if it did Peek was not deliberately indifferent to the conduct. Although the other student's conduct was harsh, unfriendly, and confrontational, it was not actionable harassment. There is absolutely no indication that E.J.'s sexual orientation motivated the other student's conduct.[12] Furthermore, even if the conduct constituted actionable harassment, Peek was not deliberately indifferent to that harassment. Peek suspended the other student for two days for spitting seeds at E.J. The fact that E.J. was also suspended for responding with violence in no way lessens the Peek's responsiveness. Peek recognized that both students were behaving improperly, and punished the students accordingly. Plaintiffs have not shown that Peek was deliberately indifferent to any harassment relating to the sunflower seed incident.

In sum, Plaintiffs have presented no evidence that E.J. was suffering actionable harassment. Additionally, Plaintiffs have presented no evidence that Peek, or any other Defendants, were deliberately indifferent to actionable harassment. Accordingly,

---

[12] Plaintiffs' Complaint states "[t]he only time action was taken against one of Plaintiff son E.J. Minor's harasser is when E.J. Minor slapped one male in the face for hawking spit in his face and calling him gay and a faggot." Compl. 8. Presumably, the Complaint refers to the sunflower seed incident. However, E.J. made it clear in his deposition that the other student in the sunflower seed incident did not use the words "gay" or "faggot." E.J. Dep. 124.

AO 72A
(Rev. 8/82)

Defendants are entitled to summary judgment on Plaintiffs' equal protection claims.

### C. Additional Allegations

Plaintiffs, in their response to Defendants' motion for summary judgment, point to an additional claim of harassment. Pls.' Resp. 10-11. The Plaintiffs refer to the incident as "Act 5" in their Response. In his deposition, E.J. states that a STAR Program employee pulled E.J. into a bathroom by his shirt, punched and kicked him, called him names, and ripped his shirt. E.J. Dep. 86-98. E.J. claims that the STAR employee asked him, "You think you're a girl," and called him "faggot" and "fat." E.J. claims that the incident was never reported, that he could not remember when it occurred, and that he did not know the name of the STAR employee.

Defendants raise various legal arguments in opposition to claims based on Act 5.[13] Defendants point out that the unidentified STAR employee is not a named defendant; Plaintiffs have presented no evidence that any of the named Defendants were aware of the incident, and all claims against the School District have already been dismissed. Thus, Defendants argue that because Act 5 is not actionable against Waters, Wells, or

---

[13] Defendants also speculate as to the veracity of E.J.'s claim. Defs.' Reply 16, Dkt. No. 38. Of course, at the summary judgment stage, the Court is not permitted to evaluate the credibility of witness testimony.

Peek, the Defendants are entitled to summary judgment on any equal protection claim based on Act 5.

While the facts E.J. alleged are disconcerting, Defendants are correct that claims based on Act 5 are not actionable against Waters, Wells, or Peek in their individual capacities. The fact that Plaintiffs made no mention of Act 5 in their Complaint further undermines their ability to raise a claim based on Act 5 at this late date. Consequently, Defendants Waters, Wells, and Peek are entitled to summary judgment on any equal protection claims based on Act 5.

## CONCLUSION

For the above stated reasons, Defendants' Motion for Summary Judgment is **GRANTED.** The Clerk is directed to enter judgment in favor of Defendants.

**SO ORDERED**, this 14th day of August, 2012.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)